IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MACY'S CORPORATE SERVICES, INC, d/b/a MACY'S LOGISTICS AND OPERATIONS | )<br>)<br>) |
| Plaintiff, | ) |
| v. | ) 1:16-cv-16 |
| WESTERN EXPRESS, INC., | ) |
| Defendant/Third-Party Plaintiff | ) |
| v. | ) |
| COTY US, LLC | ) |
| Third-Party Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Macy's Corporate Services, Inc. ("Macy's") brought this action against Western Express, Inc., ("Western") under the Carmack Amendment, 49 U.S.C. § 14706, seeking damages for cargo that was stolen during interstate shipment. (ECF No. 1.) Western filed a third-party complaint against Coty US, LLC ("Coty"), alleging claims of indemnity, contribution, breach of contract, negligent misrepresentation, and unfair and deceptive trade practices. (ECF No. 20.) Before the Court is Coty's motion to dismiss Western's Amended Third-Party Complaint. (ECF No. 25.) For the reasons that follow Coty's motion is granted in part and denied in part.

# I. BACKGROUND

## A. Carmack Amendment

Congress enacted the Carmack Amendment in 1906 to establish a national system of carrier liability for goods lost or damaged during interstate shipment under a valid bill of lading. *5K Logistics, Inc. v. Daily Express, Inc.*, 659 F.3d 331, 335 (4th Cir. 2011). "The purpose of the Carmack Amendment was to relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods." *Reider v. Thompson*, 339 U.S. 113, 119 (1950). To this end, the Carmack Amendment preempts state law claims brought against a carrier for loss or damage to goods that they transport, providing federal courts with exclusive jurisdiction over such claims. *See Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 704–05 (4th Cir. 1993).

The statute requires that a carrier issue a bill of lading for the property it transports, 49 U.S.C. § 14706(a)(1), which "records that a carrier has received goods from the party that wishes to ship them, states the terms of the carriage, and serves as evidence of the contract for carriage." *ABB Inc. v. CSX Transp., Inc.*, 721 F.3d 135, 138 n.3 (4th Cir. 2013) (quoting *Norfolk S. Ry. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 18–19 (2004)); *see OneBeacon Ins. Co. v. Haas Indus., Inc.*, 634 F.3d 1092, 1098 (9th Cir. 2011) ("A bill of lading is a contract between the carrier and the shipper."). While a carrier is "liable to the person entitled to recover under . . . [the] bill of lading" "for the actual loss or injury to the property," 49 U.S.C. § 14706(a)(1), the liability of the carrier for such property may be limited to a value declared by the shipper or by written agreement between the carrier and shipper, § 14706(c)(1)(A).

Ultimately, motor carriers are "virtual insurers" of the cargo they transport and will be held fully liable for loss or damage to the cargo unless they can show the damage or loss was caused by "(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods." *Ward v. Allied Van Lines, Inc.*, 231 F.3d 135, 139–40 (4th Cir. 2000) (quoting *Chandler v. Aero Mayflower Transit Co.*, 374 F.2d 129, 132 n.2 (4th Cir. 1967)).

### B. Complaint and Amended Third-Party Complaint

Western is a licensed motor carrier under the Carmack Amendment. (ECF No. 1 ¶ 26.) Macy's is in the business of providing, through independent contractors, "merchandise-handling and transportation-related functions" to its "affiliated retailers." (ECF No. 1-1 at 1; *see* ECF No. 1 ¶ 9.) On October 1, 2011, Macy's and Western entered into an agreement in which Western agreed to provide Macy's with transportation and handling services for merchandise and property. (ECF No. 1 ¶¶ 9, 11.) In 2014, Western agreed to transport and deliver cargo owned by Macy's from Coty in North Carolina to Macy's facility in Connecticut. (*Id.* ¶¶ 12, 15.) Coty issued Western two bills of lading for the transport of the cargo. (*Id.* ¶ 14.) While Western was transporting the Cargo from North Carolina to Connecticut, it was stolen in Virginia and has not been found. (*Id.* ¶¶ 17–19.) According to Macy's, the value of the cargo exceeded $585,000. (*Id.* ¶ 20.)

On January 11, 2016, Macy's filed this action against Western, alleging one claim under the Carmack Amendment seeking to recover the value of the cargo. (*Id.* at 3.) Western answered the Complaint and filed a third-party action against Coty. (ECF No. 11; ECF No.

3

20.) Coty moves to dismiss the third-party claims for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] (ECF No. 25.)

## II. LEGAL STANDARD

The purpose of a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a plaintiff need only plead a short and plain statement of the claim establishing that he or she is entitled to relief, *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992), "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do," *Twombly*, 550 U.S. at 555. A claim is plausible when the complaint alleges sufficient facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Generally, on a motion to dismiss, a district court may not go beyond the complaint without converting it to a motion for summary judgment. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). However, a court may consider documents that are attached to the complaint or incorporated into it. *See id.*

---

[1] Coty also moves to dismiss Western's Amended Third-Party Complaint under Rule 14(a). (ECF No. 25.) However, as more fully explained herein, the Court will not address this argument.

## III. DISCUSSION

Coty asserts that North Carolina law governs Western's third-party claims and seeks first to dismiss Western's claims of indemnification and contribution. (*See* ECF No. 26 at 1–2, 5.) Dismissal of the indemnification and contribution claims, according to Coty, would then require the Court to dismiss the remaining third-party claims as improperly impleaded under Rule 14 of the Federal Rules of Civil Procedure. (*Id.* at 2.) Finally, Coty contends that even if the remaining claims are properly impleaded, Western's negligent misrepresentation and unfair and deceptive trade practices claims must be dismissed for failure to state a claim. (*See id.*) The Court will start with the claims of indemnification and contribution.

### A. Indemnity and Contribution

According to Coty, Western's potential liability to Macy's under the Carmack Amendment is contractual in nature. (*Id.* at 5–6.) Thus, Coty reasons that it cannot be held responsible to Western for indemnification or contribution in the absence of an express or implied contract of indemnification or contribution. (*Id.* at 5.)

Coty seeks to apply North Carolina law to Western's claims of indemnification and contribution, (*id.*); however, courts have held that claims of indemnification and contribution brought by a carrier for its potential liability under the Carmack Amendment are governed by federal common law principles, not state law, *see Byrton Dairy Prods., Inc. v. Harborside Refrigerated Servs., Inc.*, 991 F. Supp. 977, 985 (N.D. Ill. 1997) (citing *Gordon H. Mooney, Ltd. v. Farrell Lines, Inc.*, 616 F.2d 619, 625–26 (2d Cir. 1980) (observing that the Carmack Amendment was silent on the issue of contribution between carrier and shipper but concluding that contribution was

5

available between them because the Amendment "was merely an enactment of already existing common law rights" and that "there is a clear trend in the law toward a rule allowing contribution among joint tortfeasors")). Further support for the application of federal law is the fact that claims of indemnification and contribution by a carrier for its liability under the Carmack Amendment are not independent causes of action; rather, they are derivative and arise only because of a defendant/third-party carrier's alleged liability under the statute, *see Horton v. United States*, 622 F.2d 80, 83 (4th Cir. 1980) (per curiam) (concluding that actions for indemnity and contribution are derivative actions); *cf. Equal Rights Ctr. v. Archstone Smith Tr.*, 603 F. Supp. 2d 814, 821–22 (D. Md. 2009) (analyzing whether federal statute or federal common law gave the defendant the right to indemnification/contribution, despite defendant's pleading its indemnification claims under state law, because such claims are derivative and arise only because of the defendant's liability under federal law), *aff'd sub nom. Equal Rights Ctr. V. Niles Bolton Assocs.*, 602 F.3d 597 (4th Cir. 2010).

The Fourth Circuit has not directly addressed whether federal or state law governs claims of indemnification or contribution brought by a carrier, but the court has relied on common law rights "rooted in equity" in deciding whether a carrier was entitled to a setoff based on a settlement made by a co-defendant. *Ward*, 231 F.3d at 139–41 (concluding "that carriers should have the benefit of the rights of subrogation and reimbursement that apply to insurers at common law" to "allow for an adjustment among the parties so that a loss is paid by the party who should bear the responsibility"); *see Franklin Stainless Corp. v. Marlo Transp. Corp.*, 748 F.2d 865, 870–71 & n.8 (4th Cir. 1984) (relying on the Second Circuit's decision in

*Gordon* and applying equitable principles of contribution in holding that shipper and carrier should share liability for an accident).

North Carolina case law, like the federal decisions, relies on common law principles of equity in apportioning fault among wrongdoers, *see Hunsucker v. High Point Bending & Chair Co.*, 75 S.E.2d 768, 771, 776 (N.C. 1953) (explaining that contribution and indemnity "rest on principles of equity and natural justice"), and has adopted federal common law principles in deciding issues of carrier liability, *see Am. Cigarette & Cigar Co. v. Garner*, 47 S.E.2d 854, 855 (N.C. 1948); *Butler Int'l, Inc. v. Cent. Air Freight, Inc.*, 402 S.E.2d 441, 445 (N.C. Ct. App. 1991). Thus, as will be further explained below, the Court concludes that Western has sufficiently stated claims of indemnification and contribution to survive dismissal at this stage in the litigation, irrespective of whether North Carolina or federal law principles ultimately govern these claims.

  1. *Indemnification*

Under federal and North Carolina law, there are three bases under which a party may seek indemnity: (1) an express contract; (2) a contract implied-in-fact; or (3) a contract implied-in-law. *Int'l Surplus Lines Ins. Co. v. Marsh & McLennan, Inc.*, 838 F.2d 124, 126–27 (4th Cir. 1988); *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346, 351 (2d Cir. 1986); *Kaleel Builders, Inc. v. Ashby*, 587 S.E.2d 470, 474 (N.C. Ct. App. 2003). In this case, Western is not seeking indemnity based on an express contractual right to indemnity. Rather, Western contends that it has an implied-in-fact right and an implied-in-law right to indemnity. (*See* ECF No. 28 at 4, 8.)

7

"A right of indemnity implied-in-fact stems from the existence of a binding contract between two parties that necessarily implies the right. The implication is derived from the relationship between the parties, circumstances of the parties' conduct, and that the creation of the indemnitor/indemnitee relationship *is derivative of the contracting parties' intended agreement*." *Ashby*, 587 S.E.2d at 474 (emphasis added). In order for there to be an implied-in-fact right to indemnity, a plaintiff must allege "special circumstances from which such an agreement might be implied." *Carl v. State*, 665 S.E.2d 787, 798 (N.C. Ct. App. 2008). Where "both parties are well equipped to negotiate and bargain for such provisions," it would be inappropriate for a court to find an implied-in-fact right of indemnity. *Schenkel & Schultz, Inc. v. Hermon F. Fox & Assocs., P.C.*, 636 S.E.2d 835, 842 (N.C. Ct. App. 2006), *aff'd*, 658 S.E.2d 918 (N.C. 2008).

Unlike implied-in-fact indemnity, the common law right to indemnification implied-in-law has been described as an equitable doctrine of indemnification. *See Ashby*, 587 S.E.2d at 475. This Court explained that implied-in-law indemnity is a quasi-contractual obligation "created by the law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent." *Ne. Solite Corp. v. Unicon Concrete, LLC*, 102 F. Supp. 2d 637, 641 (M.D.N.C. 1999) (quoting *Cox v. Shaw*, 139 S.E.2d 676, 681 (N.C. 1965)). Implied-in-law indemnity is most frequently applied in the tort context to resolve liability among joint tortfeasors. *Ne. Solite Corp.*, 102 F. Supp. 2d at 641. The North Carolina Supreme Court stated that "a party secondarily liable in a tort action is entitled to indemnity from the party primarily liable . . . when the active negligence of one tort-feasor and the passive negligence of another

tort-feasor combine and proximately cause an injury to a third-person." *Hunsucker*, 75 S.E.2d at 771; *Teachy v. Coble Dairies, Inc.*, 293 S.E.2d 182, 186–87 (N.C. 1982). To be entitled to indemnity implied-in-law, "North Carolina law requires [that] there be an underlying injury sounding in tort" and that "[t]he party seeking indemnity must have imputed or derivative liability for the tortious conduct from which indemnity is sought." *Ashby*, 587 S.E.2d at 475. Ultimately, implied-in-law indemnity is rooted in equity and is used to avoid unfairness. *See Ne. Solite Corp.*, 102 F. Supp. 2d at 641.

Western's Amended Third-Party Complaint alleges that Coty completed two bills of lading for the shipment, declaring the value of Macy's cargo and included a provision limiting Western's liability to the agreed or declared value of the cargo. (ECF No. 20 ¶¶ 6, 44.) By declaring the value of the property and including liability limitation provisions, Western alleges that "Coty acknowledged that [Western's] liability would be limited to such agreed or declared value, and that Coty would indemnify [Western] consistent with the terms of the contract and intent and conduct of [the parties]." (*Id.* ¶ 44.) Western alleges that it justifiably relied on Coty's representations in preparing the transportation of the cargo, believing the cargo to be valued at $93,145.58, not in excess of $585,000. (*See id.* ¶¶ 10–12, 43.)

    a. <u>Western fails to state a claim of indemnity implied-in-fact</u>

Coty contends that the bills of lading issued to Western, standing alone, are insufficient to establish an implied-in-fact right to indemnity. (ECF No. 26 at 8.) According to Coty, Western's allegations fail to demonstrate a binding contract between the parties that necessarily implies the right of indemnity. (*See id.*) The Court agrees.

9

Case 1:16-cv-00016-LCB-JLW   Document 31   Filed 03/30/17   Page 9 of 20

While there appears to be no dispute that the allegations are sufficient to demonstrate an agreement between Western and Coty based on the bills of lading, Western "must plead more than just an underlying agreement between the parties," *Gregory Poole Equip. Co. v. ATS Logistics Servs., Inc.*, No. 5:13-CV-549-BO, 2014 WL 1760999, at *3 (E.D.N.C. Apr. 30, 2014). Western must plead facts from which it may be plausibly inferred that there are special circumstances, such as words or conduct, that demonstrate an indemnitor/indemnitee relationship was intended between the parties such that Coty agreed to bear responsibility for the loss of the cargo. *See id.*; *McDonald Bros., Inc. v. Tinder Wholesale, LLC*, 395 F. Supp. 2d 255, 267 (M.D.N.C. 2005). Western has failed to point to any authority that would support a claim of implied-in-fact indemnity based on allegations that Coty included, and it relied on, a limitation of liability provision in a bill of lading. That Coty purportedly limited Western's liability to the declared value of the goods does not plausibly demonstrate a special relationship between the parties out of which Coty agreed to indemnify Western in an action brought by Macy's. While the Carmack Amendment addresses a shipper's ability to limit a carrier's liability if it so chooses, 49 U.S.C. § 14706(c)(1)(A), it does not address issues of indemnification between those parties.

Western's allegations are readily distinguishable from the circumstances in which courts have found an implied-in-fact right of indemnification. Western does not allege a master-servant or agency-type relationship, *Ashby*, 587 S.E.2d at 475, a promise made by Coty implying an intent to indemnify Western, *see McDonald v. Scarboro*, 370 S.E.2d 680, 686 (N.C. Ct. App. 1988); *Ashby*, 587 S.E.2d at 475, or any prior business dealings with Coty that would

10

lead Western to believe that Coty agreed to indemnify it, *see McDonald Bros., Inc.*, 395 F. Supp. 2d at 267. Nor is this case similar to the Fourth Circuit's decision in *General Electric Co. v. Moretz*, 270 F.2d 780, 786–89 (4th Cir. 1959), where the court found that a shipper was entitled to indemnity from a carrier for injuries sustained to a truck driver because of the "special contractual relationship" between the two. *See Int'l Surplus Lines Ins. Co.*, 838 F.2d at 127. The court relied on the fact that a federal statute and other laws imposed upon the *carrier*, not the shipper, a duty to transport the cargo safely, even though the shipper had failed to load the cargo safely. *Moretz*, 270 F.2d at 786–89.

Considering the allegations in the Amended Third-Party Complaint in the light most favorable to Western, as the non-moving party, Western has failed to allege facts that would allow this Court to draw the reasonable inference that it has a plausible claim of indemnification implied-in-fact against Coty. Thus, to the extent that Western's claim of indemnification is based on implied-in-fact indemnity, it is subject to dismissal for failure to state a claim.

      b. <u>Western has stated a plausible right to indemnity implied-in-law</u>

Coty next argues that Western cannot state a claim of implied-in-law indemnity because Macy's underlying injury under the Carmack Amendment sounds in contract rather than tort. (*See* ECF No. 26 at 11.) According to Coty, the right to indemnity implied-in-law exists between joint tortfeasors and any liability that Western has to Macy's stems from their contractual obligations under the bills of lading. (*Id.*) Coty further contends that even if the Carmack Amendment does sound in tort, Macy's has not filed a tort claim against both Coty

11

and Western and thus it cannot be a joint tortfeasor with Western. (*Id.* at 12–13.) The Court disagrees with both arguments.

The Carmack Amendment was intended to preempt *all* causes of action against motor carriers for loss or damaged shipments, irrespective of whether the cause of action is for tort or breach of contract. *See Shao*, 986 F.2d at 705 ("Every circuit court that has considered the issue has . . . conclude[d] . . . that the Carmack Amendment preempts a shipper's state and common law claims of breach of contract and negligence for goods lost or damaged by a carrier during interstate shipment under a valid bill of lading."). The mere fact that the underlying cause of action is governed by the Carmack Amendment "does *not* necessarily make it one sounding in breach of contract." *Custom Rubber Corp. v. ATS Specialized, Inc.*, 633 F. Supp. 2d 495, 515 (N.D. Ohio 2009) (emphasis added). Courts have stated that "the nature of the carrier's duty under the Carmack Amendment sounds in negligence." *Fulton v. Chicago, Rock Island & Pac. R.R. Co.*, 481 F.2d 326, 333 (8th Cir. 1973); *accord United States v. Reading Co.*, 289 F.2d 7, 9 (3d Cir. 1961) (affirming dismissal of case against a carrier because the carrier cannot be held liable for damage to goods caused by "the inherent vice or nature of the goods" in the absence of *negligence* on the part of the carrier); *M.I.S. Eng'g v. U.S. Express Enters., Inc.*, 438 F. Supp. 2d 1056, 1062 (D. Neb. 2006) ("[D]espite the divergent language in the various cases, it is clear that the duty therein sought to be imposed on the common carrier with respect to transportation and delivery of goods is based on the law of negligence." (quoting *Fulton*, 481 F.2d at 333)); *Seaboard Air Line R.R. Co. v. Lake Region Packing Ass'n*, 211 So. 2d 25, 27–28 (Fla. Dist. Ct. App. 1968); *see also Mo. Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964)

12

(explaining that to avoid liability under the Carmack Amendment, a carrier must prove, among other things, "that it was free from *negligence*" (emphasis added)).[2]

Nor is the Court persuaded that dismissal of Western's indemnification claim is warranted based on Coty's argument that it and Western cannot be joint tortfeasors because Macy's has not filed any claim against Coty. None of the cases cited by Coty can be read to stand for the proposition that Macy's had to file a tort claim against Coty for Western and Coty to be joint tortfeasors. Coty's argument reflects a misunderstanding of the law of indemnification and is contrary to the well settled rule that "[a]ctions for indemnification are generally brought by means of a third-party complaint," *Ne. Solite Corp.* 102 F. Supp. 2d at 640 (citing *Teachy*, 293 S.E.2d at 187). To hold as Coty urges would effectively preclude defendants from joining responsible third-parties, limiting them to cross-claims if or when the plaintiff elected to sue such parties. *Cf.* Fed. R. Civ. P. (14)(a), advisory committee's note to 1946 amendment ("The provisions in Rule 14(a) which relate to the impleading of a third party who is or may be liable to the plaintiff have been deleted by the proposed amendment. . . . [T]he

---

[2] Coty relies on *North American Van Lines, Inc. v. Pinkerton Security Systems, Inc.*, 89 F.3d 452 (7th Cir. 1996), *American Synthetic Rubber Corp. v. Louisville, & Nashville Railroad Co.*, 422 F.2d 462 (6th Cir. 1970), and *Fireman's Fund Insurance Co. v. Werner Enterprises Inc.*, No. 03 C 3228, 2004 WL 406981, at *6–7 (N.D. Ill. Feb. 6, 2004), for its argument that potential liability under the Carmack Amendment sounds in contract rather than tort and thus there can be no right of indemnification or contribution here. (*See* ECF No. 26 at 11–12.) These cases, however, do not carry the weight Coty claims. *North American Van Lines* and *Fireman's Fund Insurance* were both decided before *Sompo Japan Insurance, Inc. v. Nippon Cargo Airlines Co., Ltd.*, where the Seventh Circuit recognized a common law right to a setoff, notwithstanding its earlier decision in *North American Van Lines, see* 522 F.3d 776, 786–87 (7th Cir. 2008). The Sixth Circuit in *American Synthetic* did not address issues involving indemnification or contribution, but rather addressed the preemptive scope of the Carmack Amendment. *See* 422 F.2d at 465–66.

13

plaintiff need not amend his complaint to state a claim against such third party if he does not wish to do so.").[3]

Upon careful review of the Amended Third-Party Complaint and relevant case law, the Court concludes that Western has stated a plausible claim of indemnity implied-in-law. Like the federal common law of indemnification, implied-in-law indemnity under North Carolina law is rooted in principles of equity and fairness. Western alleges that Coty provided inaccurate representations regarding the actual value of the cargo, it justifiably relied on Coty's representations in determining whether to implement additional safety measures, and had no opportunity to inspect the load to determine its actual value. (*See* ECF No. 20 ¶¶ 12, 43, 45.) Western alleges that if it is found to be liable to Macy's, then Coty's actions in failing to disclose the "high-value nature" of the cargo entitles it to indemnity. (*Id.* ¶ 45.) Viewing these allegations in the light most favorable to Western, as the non-moving party, Western has sufficiently stated a claim of indemnification against Coty. *Cf. See Franklin Stainless Corp.*, 748 F.2d at 870 (explaining that carrier should not bear all liability for the accident and holding that contribution was proper because shipper and carrier should share the burden of liability because it was the shipper that loaded the truck and made assurances that misled the carrier into believing the load was safe).

---

[3] Moreover, federal and North Carolina state courts have permitted a defendant to assert a third-party complaint, as Western has done, against another party not named as a defendant by the plaintiff. *See, e.g.*, *Kelly v. Ga.-Pac. LLC*, 671 F. Supp. 2d 785, 790, 801 (E.D.N.C. 2009); *Duke Energy Carolinas, LLC v. Bruton Cable Serv., Inc.*, 756 S.E.2d 863, 868 (N.C. Ct. App. 2014).

### *2. Western has stated a claim of contribution*

Coty next argues that Western may not pursue contribution from Coty for the same reasons Western is unable to pursue indemnity implied-in-law. (ECF No. 26 at 13.) Specifically, Coty asserts that "[t]he right to contribution in North Carolina is governed by the Uniform Contribution Among Tortfeasors Act." (*Id.*) This statute provides:

> [W]here two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.

N.C. Gen. Stat. § 1B-1. For the same reasons the Court denied Coty's motion to dismiss Western's claim of indemnification, the Court concludes that Coty's motion to dismiss the contribution claim fails at this stage in the litigation.

### B. Remaining Claims

Having concluded that Western's indemnification and contribution claims are plausible and thus not subject to dismissal at this stage in the proceedings, the Court need not address Coty's argument that Western's breach of contract, negligent misrepresentation, and unfair and deceptive trade practices claims must be dismissed on the basis that these claims are not properly impleaded under Rule 14.[4] *See* Fed. R. Civ. P. 18 ("A party asserting a . . . third-party claim may join, as independent or alternative claims, as many claims as it has against an

---

[4] Specifically, Coty asserted that, if the Court dismissed the contribution and indemnity claims, then the remaining claims are completely independent of any liability Western has to Macy's, requiring their dismissal. (*See* ECF No. 26 at 15 ("While Western's claims for indemnity and contribution are arguably derivative of, and dependent upon, its potential liability to Macy's, if the Court dismisses Western's indemnity and contribution claims for the reasons outlined herein, each of Western's remaining state law claims are completely *independent* of possible liability to Macy's.").)

15

opposing party."). The Court will, however, examine Coty's arguments that Western's negligent misrepresentation and unfair and deceptive trade practices claims must be dismissed for failure to state a claim.[5] Because these claims are not dependent on Western's liability to Macy's, it is clear they are governed by North Carolina law.

### 1. *Negligent Misrepresentation*

Coty moves to dismiss Western's negligent misrepresentation claim on the ground that Western has failed to plead facts sufficient to allege Coty owed Western a duty of care that is separate and distinct from the duty Coty owed under the parties' bill of lading contract. (ECF No. 26 at 16.) In particular, Coty argues that Western's alleged injury is the loss of Macy's cargo, which is also the subject matter of the bill of lading contract. (*Id.* at 17.) According to Coty, it is the law of contract, not the law of negligence, which defines the parties' obligations and remedies. (*Id.* at 17.) The Court agrees.

It is well settled that "a breach of contract does not give rise to a tort action." *Kelly*, 671 F. Supp. 2d at 791 (quoting *N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co.*, 240 S.E.2d 345, 350 (N.C. 1978), *rejected in part on other grounds by Trs. of Rowan Tech. Coll v. J. Hyatt Hammond Assocs., Inc.*, 328 S.E.2d 274 (N.C. 1985)); *see also LRP Hotels of Carolina, LLC v. Westfield Ins. Co.*, No. 4:13-cv-94-D, 2014 WL 5581049, at *6 (E.D.N.C. Oct. 31, 2014) (dismissing negligence and negligent misrepresentation claims because they are based on the alleged negligence in the performance of duties under the contract). "When injury occurs to the subject matter of a contract, '[i]t is the law of contract and not the law of negligence which

---

[5] Coty does not seek dismissal of Western's breach of contract claim for failure to state a claim.

16

Case 1:16-cv-00016-LCB-JLW   Document 31   Filed 03/30/17   Page 16 of 20

defines the obligations and remedies of the parties . . . .'" *LRP Hotels*, 2014 WL 5581049, at *6 (alteration in original) (quoting *Spillman v. Am. Homes of Mocksville, Inc.*, 422 S.E.2d 740, 742 (N.C. Ct. App. 1992)). Thus, to pursue a tort claim and a breach of contract claim involving the same conduct, "a plaintiff must allege a duty owed him by [a] defendant separate and distinct from any duty owed under a contract." *Id.* (alteration in original) (quoting *Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc.*, 994 F. Supp. 350, 362 (W.D.N.C. 1997)).

Western has failed to adequately plead the existence of a duty independent of the alleged duty owed by Coty under the parties' bills of lading. Western alleges in its Amended Third-Party Complaint that "Coty supplied information to Western Express, in the ordinary course of Coty's business, regarding the value of the subject cargo, and for purposes of a transaction in which both Coty and Western Express had a financial and pecuniary interest." (ECF No. 20 ¶ 21.) Western further alleges that "Coty owed a duty to Western Express to provide accurate information regarding the actual value of the cargo owned by Macy's and being shipped by Coty" and that Western relied on such information in preparing the transportation of the cargo. (*Id.* ¶¶ 23–25.) Virtually the same allegations form the basis of Western's breach of contract claim. (*See id.* ¶ 16 ("Coty was obligated under the terms of its contract with Western Express to provide accurate information to Western Express regarding the actual value of the cargo owned by Macy's and being shipped by Coty."); *id.* ¶ 17 ("Coty breached its contract with Western Express by providing false and inaccurate information to Western Express regarding the value of the subject cargo, by failing to properly declare or disclose the actual value of the cargo to Western Express . . . .").) While Western alleges that

17

it relied on Coty's representation in preparing transportation of the cargo, (*id.* ¶ 22), Western has not alleged an identifiable duty owed by Coty separate and distinct from any duty allegedly owed under the parties' bills of lading. Thus, Western's negligent misrepresentation claim must be dismissed for failure to state a claim.

### 2. *North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA")*

This claim requires "(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business." *Faucette v. 6303 Carmel Rd., LLC*, 775 S.E.2d 316, 323 (N.C. Ct. App. 2015) (quoting *Spartan Leasing Inc. v. Pollard*, 400 S.E.2d 476, 482 (N.C. Ct. App. 1991)). "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." *Id.* at 324 (quoting *Dalton v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001)). Importantly, a mere breach of contract is insufficient to support a UDTPA claim unless there are "substantial aggravating circumstances." *Stack v. Abbott Labs., Inc.*, 979 F. Supp. 2d 658, 668 (M.D.N.C. 2013) (quoting *Griffth v. Glenn Wood Co.*, 646 S.E.2d 550, 558 (N.C. Ct. App. 2007)).

Here, the Amended Third-Party Complaint alleges, among other things, that "[t]he formation of the contract between Coty and Western Express and the decisions regarding the shipment of the cargo . . . were dictated by Coty's deception and misrepresentation in undervaluing the cargo." (ECF No. 20 ¶ 36.) Western alleges that these misrepresentations were in and affecting commerce and proximately caused it to suffer damages. (*Id.* ¶¶ 37–38.) Taken as true, these allegations are sufficient to state a UDTPA claim against Coty.

18

The Court rejects Coty's argument that Western has alleged "no new substantially aggravating circumstances—surrounding this alleged wrongdoing that it has not already alleged in support of its previous contract claim[]." (ECF No. 26 at 19–20.) Western has alleged that formation of its contract was "dictated" by Coty's deception. *See Stack*, 979 F. Supp. 2d at 668 ("The type of conduct that has been found sufficient to constitute a substantial aggravating factor has generally involved forged documents, lies, and fraudulent inducements."). Thus, the Court denies Coty's motion to dismiss Western's UDTPA claim.

## C. Conclusion

Western has stated claims of indemnification and contribution, permitting Western to bring its breach of contract, negligent misrepresentation, and UDTPA claims. While Western has stated a claim to relief on its UDTPA claim, Western's negligent misrepresentation claim must be dismissed for failure to state a claim. Coty has not moved to dismiss Western's breach of contract claim. Thus, Coty's Motion to Dismiss the Amended Third-Party Complaint should be granted only as to the negligent misrepresentation claim, and should be denied as to the indemnification, contribution, breach of contract, and UDTPA claims.

For the reasons outlined herein, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Coty's Motion to Dismiss Western's Amended Third-Party Complaint (ECF No. 25) is GRANTED IN PART AND DENIED IN PART. Coty's motion is granted to the extent it seeks dismissal of Western's negligent

misrepresentation claim; and the motion is denied to the extent it seeks dismissal of Western's remaining claims.

This, the 30th day of March, 2017.

                                /s/ Loretta C. Biggs
                            United States District Judge